UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| CHRISTIAN EDUARDO GAYBOR, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 5: 16-26-DCR |
| | ) | |
| v. | ) | |
| | ) | |
| FRANCISCO QUINTANA, Warden, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Respondent. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Christian Eduardo Gaybor is an inmate confined at the Federal Medical Center in Lexington, Kentucky.  Proceeding without an attorney, Gaybor has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  [Record No. 1]

In January 2002, a federal grand jury in Phoenix, Arizona issued an indictment charging Gaybor and four accomplices with interfering with commerce by threats and violence in violation of 18 U.S.C. §§ 1951 and with brandishing a firearm in connection with a crime of violence in violation of 18 U.S.C. §§ 924(c)(1).  A jury found Gaybor guilty of both counts following trial. The United States Court of Appeals for the Ninth Circuit upheld Gaybor's conviction on appeal, but remanded the matter for resentencing.

---

[1] The Court conducts an initial review of habeas corpus petitions.  28 U.S.C. § 2243; *Alexander v. Northern Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011).  A petition will be denied "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief."  Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)).  The Court evaluates Gaybor's petition under a more lenient standard because he is not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  At this stage of the proceedings, the Court accepts the petitioner's factual allegations as true and construes all legal claims in his favor.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

In June 2006, the trial court sentenced Gaybor to a cumulative 209-month term of incarceration with credit for time served. Gaybor sought relief from his convictions under 28 U.S.C. § 2255 but the trial court denied relief in May 2008. *United States v. Gaybor*, No. 2:01-CR-1136-SMM (D. Ariz. 2001) [Record Nos. 14, 134, 170, 225, 265, 266, 286 therein] Gaybor filed a motion in 2014 with the trial court requesting a recommendation to the Bureau of Prisons ("BOP") that he be placed in a Residential Re-Entry Center ("RRC," or "halfway house") for the last twelve months of his sentence. The government noted in its response that Gaybor was born in Ecuador in 1977, but had obtained "lawful permanent resident" status in December 1997. However, in light of his commission of serious federal crimes, the Immigration and Customs Enforcement ("ICE") division of the Department of Homeland Security had lodged a detainer with the BOP based upon its preliminary determination that he constituted a "deportable alien" within the meaning of 8 U.S.C. §§ 1227(a)(2)(A)(iii) and (a)(2)(C). As a result, the trial court denied Gaybor's motion in March 2015. [Record Nos. 318-20 therein]

Gaybor states in his current petition that he is challenging the BOP's December 2013 determination that he is subject to deportation. Specifically, he states that he is eligible for a "waiver of grounds of inadmissibility pursuant to 8 U.S.C. § 1182(h) having obtained LPR status under 8 U.S.C. § 1155(a) after entering the United States." Gaybor does not offer any further factual or legal basis to support his contention. For relief, Gaybor requests an order directing the BOP to list his mother's address in New Jersey as his release address. [Record No. 1 at 2, 6-7, 9]

Because Gaybor has previously sought relief from the BOP's determination that he is not eligible for RRC placement, and because it is ICE, not the BOP, who will determine whether Gaybor is deportable, the Court construes Gaybor's petition as an effort to challenge not ICE's detainer itself, but the BOP's corresponding conclusion that he is not appropriate for RRC

-2-

placement because upon expiration of his sentence he will not be released to the community at all, but transferred to ICE custody to determine whether he should be removed from the United States.

In an effort to reduce recidivism, federal law permits the BOP to place a prisoner in a halfway house towards the end of his or her sentence to help the prisoner adjust to civilian life:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), *under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community*.  Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c) (emphasis added).  As part of its determination to place an inmate in a RRC, the BOP refers to the factors set forth in 18 U.S.C. § 3621(b) (i.e., the statute that governs all prisoner placement decisions).  The BOP has promulgated regulations to implement these rules at 28 C.F.R. §§ 570.21, .22 (2008), and has further set forth operating procedures in its Program Statement 5331.02, *Early Release Procedures* (March 16, 2009).

Because Congress has expressly vested the BOP with wide discretion regarding placement decisions, the Court's review of its determination is limited to assessing whether the BOP abused that discretion.  Cf. *Vasquez v. Strada*, 684 F. 3d 431, 434 (3d Cir. 2012); *Sacora v. Thomas*, 628 F. 3d 1059, 1068-69 (9th Cir. 2010); *Fournier v. Zickefoose*, 620 F. Supp. 2d 313, 318 (D. Conn. 2009).  In the exercise of that discretion, the BOP has established that "… the following categories of inmates are not eligible for early release: (1) Immigration and Customs Enforcement detainees; …" 28 C.F.R. § 550.55(b).  The BOP's internal operating procedures clarify that this includes any inmate who "has a detainer that will prohibit completion of the community treatment component of the RDAP."  Program Statement 5331.02, § 7(a).

In summary, because inmates like Gaybor will be transferred pursuant to a detainer to ICE custody for possible deportation instead of repatriated into the community, the BOP has

determined that they present an unreasonable flight risk and that the limited resources available at halfway houses are better expended on other inmates.  Courts have consistently upheld this conclusion as reasonable under the statute and regulations.  *McClean v. Crabtree*, 173 F.3d 1176, 1184 (9th Cir. 1999) (holding that BOP's categorical exclusion of prisoners with immigration detainers from participation in RDAP and halfway house placement was permissible exercise of statutorily-granted discretion); *Garcon v. Cruz*, No. 6:14-4332-RMG, 2015 WL 4557146, at *3-4 (D.S.C. July 28, 2015) (same); *Talero v. O'Brien*, No. 1: 11cv169, 2012 WL 1697348, at *6 (N.D. W.Va. April 19, 2012) (same) (citing *Carranza v. Medellin*, 252 F.3d 1356 (5th Cir. 2001)).  The Court finds this conclusion well-supported by the regulations and the circumstances of Gaybor's case, and concludes that his petition fails to state viable grounds for relief.

Accordingly, it is hereby **ORDERED** as follows:

1.      Petitioner Gaybor's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [Record No. 1] is **DENIED**.

2.      This action is **DISMISSED** and **STRICKEN** from the Court's docket.

3.      Judgment shall be entered contemporaneously with this Memorandum Opinion and Order.

This 17th day of October, 2016.



Signed By:

*Danny C. Reeves*

United States District Judge

-4-